UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DARLA CUNHA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-24-514-R |
| | ) | |
| UNUM LIFE INSURANCE COMPANY | ) | |
| OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

In this action brought pursuant to the civil enforcement provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1132, Plaintiff Darla Cunha alleges that Defendant Unum Life Insurance Company of America wrongfully terminated her long-term disability benefits. The matter is now fully briefed [Doc. Nos. 19, 22] and at issue.[1]

## BACKGROUND

As set out in the administrative record [Doc. No. 11], Ms. Cunha was employed as a registered nurse by HCA Hospitals for several years. Ms. Cunha stopped working on September 18, 2007 due to medical issues related to her back and hips, including a surgical procedure to her hip area. R. at 5, 15. She had several additional surgeries to her back and hips over the following years, including a joint fusion in her spine and a left hip replacement. R. at 15-19.

---

[1] Plaintiff requested, and the Court granted, six extensions of the deadline to file a reply to Unum's response brief. *See* Doc. Nos. 24, 26, 28, 30, 32, 34. Despite repeatedly requesting additional time, Plaintiff ultimately elected to not file a reply brief. This has needlessly delayed the resolution of this case.

1

Through her employer, Ms. Cunha participated in a long-term disability Plan administered and insured by Unum. The Plan provided monthly disability benefits to an insured who meets the policy's definition of disabled. The Plan defines disabled as "limited from performing the material and substantial duties of your regular occupation due to your sickness or injury." R. at 110. However, after twenty-four months have elapsed, the Plan defines disabled as "due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience." *Id.*

Ms. Cunha made a claim for disability benefits under the Plan and Unum approved the claim on April 7, 2008. R. at 294. Unum subsequently approved Ms. Cunha for continuing benefits under the "any occupation" definition that applies after 24 months and she continued to receive disability benefits for over fifteen years. R. at 1285. During this time, Unum periodically obtained updates from Ms. Cunha and/or her medical providers regarding her condition. On September 15, 2023, Unum determined that Ms. Cunha was no longer disabled within the meaning of the Plan because she could perform the duties of alternative, gainful employment and terminated her benefits. R. 2216-2217; 2223-2231.

In making this determination, Unum relied, in part, on information supplied by Ms. Cunha during a phone call on July 7, 2023. Ms. Cunha reported that she still has a lot of pain, she takes narcotic medication three times a day, and she did not have any future procedures scheduled. R. at 2030. Ms. Cunha also stated that she takes care of a summer garden with raised beds, did the dishes and laundry, could drive short distances, could walk without a cane, used a grabber to reach items that were high or low, has to lie down

2

periodically throughout the day, and has weakness in her hands from carpal tunnel syndrome. *Id.* Ms. Cunha also completed a work experience and education questionnaire where she indicated that she cannot sit or stand for long periods, cannot use the computer due to her history of carpal tunnel syndrome, and must lay down often. R. at 2155-57.

Unum obtained medical records from Dr. Matthew J. Boeckman, Plaintiff's pain management provider. The records indicated the daily use of narcotic medication to control pain and that, during a June 2023 visit, Ms. Cunha stated that she was "busy due to having to help take care of grandchildren." R. at 2059. Dr. Boeckman declined to complete a form provided by Unum inquiring about Ms. Cunha's restrictions and limitations and noted in his response that the patient has to go to her primary care physician for that information. R. at 2176-80. Ms. Cunha reported to Unum that her primary care provider, Nurse Practitioner Lindsay Flaming,[2] does not treat her disability. R. at 2030.

Unum assigned Ms. Cunha's claim to Tracy Berkel, a registered nurse and case manager, to conduct a review of Ms. Cunha's medical history and condition. R. at 2200. Ms. Berkel concluded that the available information did not preclude Ms. Cunha from performing a sedentary job, which involves mostly sitting, standing or walking for brief periods, lifting up to ten pounds, frequent reaching at desk level, and up to constant keyboarding. R. at 2200-2205. Carrie Cousins, a vocational rehabilitation consultant at Unum, conducted a vocational review and concluded that Ms. Cunha is reasonably fitted by education, training or experience to perform certain occupations within the sedentary

---

[2] Although Ms. Cunha'a brief refers to her as "Dr. Fleming," the medical records indicate that her name is Lindsay Flaming and she is a nurse practitioner.

3

work category, including clerical assistant, secretary, or personnel scheduler. R. at 2211-13.

Unum memorialized its determination to terminate benefits in a letter which noted Ms. Cunha's reports of continued pain, monthly pain medication treatment with Dr. Boeckman, history of carpal tunnel syndrome, and lack of documentation from medical providers reflecting current limitations or restrictions or precluding work. R. at 2223-31. The letter further explained that although Unum agreed with the Social Security Administration's decision to award Social Security Disability Benefits in 2009, Unum's current decision differs because the available information shows improvement and stability in Ms. Cunha's condition. *Id.*

Ms. Cunha filed an appeal and submitted a written narrative clarifying that she provided very limited care for her grandchildren during a brief period of time, her gardening is limited to turning on the irrigation system, and she had an upcoming appointment with her neurosurgeon, Dr. Nasr. R. at 2254-59. She also provided medical records from Dr. Nasr from 2018-2019 where he recommended an additional back surgery. R. at 2260-2278. However, Dr. Nasr's records from that time also note that Ms. Cunha "improved symptomatically," "clinically actually looks okay," and is wanting to hold off on surgery, which he agrees with. *Id.* A different Unum clinical consultant and registered nurse, Amanda Abbott, completed a full review of the medical records and concluded that the available medical information did not support restrictions that precluded sedentary work. R. at 2299.

Unum provided Ms. Cunha with a copy of the additional documentation it obtained

during the appeal so she could respond. Ms. Cunha requested Unum delay its determination because she was scheduled for an updated MRI in November 2023 and an appointment with her surgeon in January 2024. R. at 2317-20. To accommodate this, Unum treated Ms. Cunha's original appeal as an intent to appeal, which gave her until March 14, 2024 to file her appeal. R. at 2320; 2323.

Ms. Cunha, now represented by counsel, submitted an appeal request on March 7, 2024 and requested a 60-day extension of the deadline. R. at 2329-2342. Unum provided counsel with the claim file and agreed to a 30-day extension. *Id.* Ms. Cunha then requested an additional 7-day extension, which Cunha agreed to. *Id.* However, Ms. Cunha did not submit additional documentation related to her scheduled MRI or medical appointment by the deadline. Instead, Ms. Cunha's counsel submitted a letter instructing Unum to proceed with their appeal decision because they had "nothing further to provide because of your inability to give us adequate time for anything other than a cursory review of the massive file." R. at 2342.

Unum denied Ms. Cunha's appeal by letter dated May 1, 2024. R. at 2350-57. The letter noted that Ms. Cunha is independent in her daily living activities and can drive, work in her raised garden bed, and take care of her grandchildren. The letter also acknowledged Ms. Cunha's long history of medical conditions including back, hip, and carpal tunnel surgery; her pain management treatment with Dr. Boeckman; Dr. Nasr's recommendation for surgery and his observation that her symptoms improved without surgery; and that no current treatment provider is asserting restrictions or limitations. *Id.* This lawsuit followed.

5

## STANDARD

"Where, as here, an ERISA plan grants a plan administrator or a delegate discretion in interpreting the terms of, and determining the grant of benefits under, the plan, [the court is] required to uphold the decision unless arbitrary and capricious." *Adamson v. Unum Life Ins. Co. Of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006).[3] Under this standard, "the decision will be upheld so long as it is predicated on a reasoned basis." *Id.* "[T]here is no requirement that the basis relied upon be the only logical one or even the superlative one." *Id.*

"Indicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002). "Substantial evidence requires more than a scintilla but less than a preponderance." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992) (quotation omitted). As explained in *Caldwell*,

> [s]ubstantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker. Substantiality of the evidence is based upon the record as a whole. In determining whether the evidence in support of the administrator's decision is substantial, we must take into account whatever in the record fairly detracts from its weight. We give less deference if a plan administrator fails to gather or examine relevant evidence.

*Id.* at 1282 (internal quotation marks, brackets, and citations omitted). Additionally, where a defendant acts under a conflict of interest as both the plan administrator and the insurer, the conflict of interest is weighed as a factor in the review. *Hancock v. Metro. Life Ins. Co.*,

---

[3] The parties agree that the arbitrary and capricious standard applies because the plan gives the administrator discretionary authority to determine eligibility for benefits.

590 F.3d 1141, 1155 (10th Cir. 2009). "A conflict is more important when 'circumstances suggest a higher likelihood that it affected the benefits decision,' but less so when the conflicted party 'has taken active steps to reduce potential bias and to promote accuracy.'" *Id.* (quoting *Metro. Life. Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008).

Last, courts are prohibited "from considering materials outside the administrative record where the extra-record materials sought to be introduced relate to a claimant's eligibility for benefits." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1162 (10th Cir. 2010).

## DISCUSSION

Unum argues that the administrative record contains substantial evidence for its determination that Ms. Cunha does not presently meet the definition of disabled under the "any occupation" standard contained in the Plan. Ms. Cunha counters that Unum ignored or cherry-picked evidence from the administrative record, did not make an effort to obtain a complete medical record, and inappropriately concluded that Ms. Cunha's subjective reports of pain and limitations are not credible. The Court has laboriously reviewed the administrative record and, although there is certainly some evidence that would have supported a determination in Ms. Cunha's favor, the Court cannot conclude that Unum acted in an arbitrary and capricious manner in denying the claim.

Unum's denial of benefits acknowledged Ms. Cunha's multiple back and hip surgeries, 2016 carpal tunnel surgery, ongoing pain, and SSDI award. But the pertinent question is whether, at the time of the determination of her eligibility for benefits in 2023, Ms. Cunha was disabled under the "any occupation" standard contained in the Plan. As to

that question, the medical records from Ms. Cunha's only current providers contain support for Unum's conclusion that she experienced some improvement in her condition and was now stable.

Specifically, the medical records from Dr. Boeckman indicate the daily use of narcotic medication for pain reduction with reports of benefit and no scheduled procedures or surgeries. *See, e.g.*, R. at 2108-2111. The last encounter with Ms. Flaming was on August 17, 2022 for a routine follow-up visit. The records from that visit do not reflect specific treatment for her back/hip and indicate that she is under the care of Dr. Boeckman for pain management. R. 2037-2045. There were no updated records from current providers documenting restrictions, limitations, or an inability to perform work. Further, during her internal appeal, Ms. Cunha indicated that she was scheduled to return to her surgeon and obtain updated imaging but she never submitted additional records. The records she did send were from 2018 and 2019 visits with her surgeon, Dr. Nasr, which indicated that she began to "improve[] symptomatically," "clinically looks okay," and holding off on further surgery was fine. R. at 2267. Unum's two clinical reviewers concluded that the exam findings from these providers were inconsistent with Ms. Cunha's reported symptoms and activity level and did not contain evidence restricting her ability to perform sedentary work.

In challenging this determination, Ms. Cunha argues that Unum ignored or cherry-picked evidence. She specifically faults Unum for not considering a 2021 form completed by Ms. Flaming indicating that Ms. Cunha has restrictions from 2005 to "lifetime" on sitting/standing/walking and pushing/pulling. She also faults Unum for not following up with Ms. Flaming before making its decision to deny benefits in 2023.

To be sure, plan administrators "cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory." *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004). And a "previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments." *Williams v. Metro. Life Ins. Co.*, 459 F. App'x 719, 731 (10th Cir. 2012) (quoting *Kecso v. Meredith Corp.*, 480 F.3d 849 (8th Cir.2007)). But "paying benefits does not prevent an administrator from denying benefits when the administrator becomes aware of new information about the claimant's eligibility for benefits." *Id*. In general, an insurer does not act unreasonably by requiring "objective evidence that a claimant's diagnosed condition renders her unable to perform her occupational duties." *Swanson v. Unum Life Ins. Co. of Am.*, No. 13-CV-4107-JAR, 2015 WL 339313, at *9 (D. Kan. Jan. 26, 2015); *Rizzi v. Hartford Life & Acc. Inc. Co.*, 383 F. App'x 738, 753 (10th Cir. 2010) ("A plan administrator need not ignore reliable medical evidence in deference to subjective reports; nor is it unreasonable to expect some supporting evidence to buttress a claim of disability.").

The record does not support Ms. Cunha's suggestion that Unum ignored this evidence or failed to compile a complete record. Unum's review following Ms. Cunha's internal appeal shows that it specifically considered Ms. Flaming's 2021 assessment, obtained the medical records from the most recent visit with Ms. Flaming, and considered the more recent medical records from Dr. Boeckman. R. at 2310-2315. Although the 2021 form is favorable to Ms. Cunha, Unum's "reliance on some evidence and rejection of other

9

evidence does not make the decision arbitrary or capricious." *Chen v. CenturyLink*, No. 15-CV-01651-MSK-KMT, 2017 WL 2199008, at *9 (D. Colo. May 18, 2017). Further, Ms. Cunha had the opportunity to submit additional evidence documenting the disabling severity of her condition, but declined to do so. *See also Sandoval v. Aetna Life & Cas. Ins. Co.,* 967 F.2d 377, 381 (10th Cir. 1992) (noting that the claimant "had the opportunity to submit additional evidence of physical or other disability and "[a]n administrator's decision is not arbitrary or capricious for failing to take into account evidence not before it."); *Merao v. Williams Co. Long Term Disability Plan,* 221 F. App'x 696, 706 (10th Cir. 2007) (finding that plan administrator's denial of benefits after ten years of payments was not arbitrary where claimant "fail[ed] to submit recent, comprehensive medical evidence sufficient to establish the disabling nature of her [condition]"); *Smith v. Standard Ins. Co.*, No. CV-16-953-G, 2018 WL 6012372, at *3 (W.D. Okla. Nov. 16, 2018) (affirming denial of benefits despite treating physician's opinion that plaintiff "would 'never' be able to perform her usual work again" and had several restrictions because defendant considered the evidence but reached a different conclusion).

Ms. Cunha also makes much of the fact that she was awarded Social Security Disability benefits in 2009, contending that "anyone who knows anything about Social Security disability" knows that winning an initial application with the Social Security Administration under the age of fifty is "beyond extraordinary."[4] She further contends that

---

[4] She also contends that Unum incorrectly stated in a claim note that she qualified for SSDI because of a "hip condition" and that this error reflects the "shoddy handling" of the claim. The Court is not persuaded that this isolated reference suggests that Unum misunderstand the basis of the SSDI award.

Unum failed to properly consider the ongoing award of SSDI benefits and speculates that the Social Security Administration reviewed its decision multiple times over the years without anyone knowing.

The SSA's initial determination (which Unum agreed with) occurred in 2009 and does not necessarily reflect Ms. Cunha's current medical status. Although a plan administrator should certainly consider an insured's eligibility for SSDI, the "past and continued receipt of Social Security disability benefits" does not require an insurer "to continue to pay benefits under the Plan despite its finding that she had failed to establish her entitlement to such continued benefits under the Plan requirements." *Meraou*, 221 F. App'x at 706. Of course, where there is overlap between the SSA's definition of disability and the Plan's definition, a contrary determination by the insurer requires "some reconciliation." *Liebel v. Aetna Life Ins. Co.*, 595 F. App'x 755, 763 (10th Cir. 2014). Unum did that here. The record shows that Unum specifically acknowledged that its decision was inconsistent with Ms. Cunha's social security disability status and it provided an explanation as to why it reached a different conclusion, relying primarily on the more recent medical information showing that Ms. Cunha's condition was stable and no current provider was asserting restrictions.

Ms. Cunha next contends that Unum acted improperly because its denial letter stated that a medical review was completed during the internal appeal by "another Clinical Consultant" without disclosing the identity of the clinical consultant. She also notes that Unum's vocational assessment was performed by a salaried Unum employee.

Unum does not directly respond to Ms. Cunha's argument on the first point but the

administrative record indicates that the review on appeal was performed by Amanda Abbott, a registered nurse and "Senior Clinical Consultant." R. at 2299. As to the second point, Unum contends that it took active steps to reduce any potential bias from its dual role by utilizing "multiple parties," including disability specialists, clinical professionals, and quality control consultants. *See Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 117 (2008). Other ther than noting that several "parties" were involved in the decision making process, Unum has not identified any other "active steps" it took to reduce its potential bias and ensure accuracy. *See Brown v. Hartford Life Ins. Co.*, 428 Fed App'x 817, 821 (10th Cir. 2011) (finding that "separating the initial claims handler from the appeals specialist" can be one step that will minimize the impact of the conflict). Further, it appears that the parties responsible for reviewing the claim were all Unum employees, as opposed to independent medical and vocational reviewers. Although Unum's use of its own on-site nurses and employees is relevant, the Court is not persuaded that this factor is enough to tip the scale given that Unum has offered a reasoned explanation for its decision and Ms. Cunha was given an opportunity to submit additional information regarding the disabling severity of her condition.

Ms. Cunha next takes issue with Unum's assessment that she could perform sedentary work in a clerical or secretarial position. She argues that these occupations have nothing to do with her nursing job, she has no transferable skills to these occupations, and she is too old to learn a new kind of job. The "any occupation" definition does not require an exact fit with her nursing background but instead requires that she be able perform the duties of "any gainful occupation" for which she is "reasonably fitted by education, training

12

or experience." Unum's vocational assessment noted Ms. Cunha's age and considered her background and functional capacity, including the need for an occupation to allow for positional changes as needed. The assessment determined that Ms. Cunha's prior education and work history as a registered nurse included several skills that transfer to other occupations within her physical limitations. Ms. Cunha's challenges to the reasonableness of the vocational assessment are unpersuasive.[5]

Last, in addition to her challenge to the denial of benefits, Ms. Cunha contends that Unum incorrectly calculated her benefits. The Plan provides that Unum will pay benefits based upon monthly earnings in effect "just prior to your date of disability." R. at 111. Ms. Cunha argues that this term is vague and unfair because people often work less just prior to seeking disability. The record indicates that Unum calculated Ms. Cunha's monthly earnings by utilizing the average hours worked over the course of seven pay periods that spanned at least two months prior to her stopping work. R. at 203. This is a reasonable interpretation and application of the Plan's terms and Ms. Cunha does not provide any authority supporting her assertion otherwise.

Ms. Cunha also contends that Unum incorrectly calculated her rate of pay because

---

[5] Ms. Cunha's complaint that she cannot perform the "constant keyboarding" required by the alternate occupations is likewise unpersuasive. UNUM's internal appeal noted Ms. Cunha's 2016 carpal tunnel surgery and self-reported weakness in her hands, but also noted that there is no recent medical evidence of hand or wrist weakness. R. at 2298-2299. Ms. Cunha provided no documentation in support of this condition or its affect on her ability to work and the most recent medical records from Dr. Boeckman state that carpal tunnel is "denied." R. at 2109. *See Liebel v. Aetna Life Ins. Co.*, 595 F. App'x 755, 765 (10th Cir. 2014) (finding that the absence of a specific reference to another condition in insurer's final decision was not improper because none of the claimant's doctors stated that the condition caused an inability to work).

13

there is one entry in the administrative record that appears to indicate that her annual salary is $47,070.40, but Unum paid monthly benefits based on an annual salary of $39,003.72. The entry reflecting the higher annual income does not include any context explaining how the figure was reached. The record contains the payroll records and calculation worksheet Unum used to determine Ms. Cunha's monthly earnings and the documents support Unum's contention that the payment amount was grounded on a reasonable basis. R. 203-205.

## CONCLUSION

In sum, the Court finds that Unum gave Ms. Cunha a full and fair opportunity to present her claim and did not act arbitrarily in denying her claim for continued long term disability benefits. This is not an easy case and, although the Court may have reached a different decision in the first instance, the Court is constrained by the applicable standard of review. That standard asks whether there is a reasoned basis for the decision, not whether the decision is the best or most logical one. Unum acknowledges that Ms. Cunha has a long history of serious hip and back treatment, previously met the Plan's definition of disabled, and she received benefits for many years. However, Unum has provided a reasoned explanation for its change of course and pointed to more than a scintilla of evidence to support its decision. For that reason, the Court is unable to conclude that Unum acted in a arbitrary and capricious manner when it denied the claim. Accordingly, judgment will be entered in favor of the Defendant and against the Plaintiff.

IT IS SO ORDERED this 16th day of December, 2025.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE